[No. B188106. Second Dist., Div. Three. Feb. 25, 2010.]

PFIZER INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
STEVE GALFANO, Real Party in Interest.

624

## COUNSEL

Kaye Scholer, Thomas A. Smart, Richard A. De Sevo and Jeffrey S. Gordon for Petitioner.

Shook, Hardy & Bacon, Natasha Mosley, Victor E. Schwartz, Cary Silverman; Erika Cuneo Frank; and Robin S. Conrad for Chamber of Commerce of the United States of America and the California Chamber of Commerce as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Westrup Klick, R. Duane Westrup, Christine C. Choi; and Allan A. Sigel for Real Party in Interest.

Schubert Jonckheer Kolbe & Kralowec, Kimberly A. Kralowec; Arbogast & Berns and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

OPINION

**KLEIN, P. J.**—Defendant Pfizer Inc. (Pfizer), the manufacturer of Listerine mouthwash, seeks a writ of mandate to overturn respondent superior court's November 22, 2005 order certifying a class action filed by plaintiff and real party in interest Steve Galfano (Galfano). The complaint, brought pursuant to the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.)[1] and the false advertising law (FAL) (§ 17500 et seq.), alleges Pfizer marketed Listerine in a misleading manner by representing the use of Listerine can replace the use of dental floss in reducing plaque and gingivitis.

The trial court certified a class of "all persons who purchased Listerine, in California, from June 2004 through January 7, 2005." In our previous decision in this matter, filed July 11, 2006, we granted Pfizer's petition for writ of mandate, concluding the trial court's ruling, which certified a class consisting of all persons who purchased Listerine in California during a six-month period, was overbroad.

The Supreme Court granted review. On August 19, 2009, the Supreme Court transferred the matter back to this court with directions that we vacate our decision and reconsider the matter in light of *In re Tobacco II Cases* (2009) 46 Cal.4th 298 [93 Cal.Rptr.3d 559, 207 P.3d 20] (*Tobacco II*). Having done so, we conclude *Tobacco II* does not require a different disposition herein. We again conclude the class is overbroad and grant Pfizer's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The proposed class action complaint.*

On January 11, 2005, Galfano filed a consumer action against Pfizer in his individual capacity and on behalf of all others similarly situated, based upon Pfizer's alleged misrepresentations and failure to disclose material information in the marketing, labeling, advertising and sale of Listerine mouthwash. Galfano pled that Pfizer advertised and promoted Listerine in a misleading manner by indicating the use of Listerine can replace the use of dental floss in reducing plaque and gingivitis. The complaint asserted causes of action for breach of express warranty, false advertising under section 17500 and unlawful, unfair and fraudulent business practices under section 17200.[2]

---

[1] All further statutory references are to the Business and Professions Code, unless otherwise specified.

[2] On November 2, 2004, the electorate approved Proposition 64, which amended the standing requirements of the UCL and the FAL. (§§ 17200 et seq., 17203, 17204, 17500 et seq., 17535.) Galfano commenced this action *after* the effective date of Proposition 64.

With respect to the class action allegations, Galfano alleged he represented "[a]ll persons who purchased Listerine, in California, from approximately June of 2004 to the date of judgment in this action. . . ."

### 2. *Galfano's motion for class certification.*

On September 9, 2005, Galfano filed a motion for class certification. Galfano sought to certify the following class: "All persons who purchased Listerine with labels that state 'as effective as floss,' in California, from June 28, 2004 through January 7, 2005 ('the Class Period')."

In seeking class certification, Galfano contended the class is ascertainable, the class is so numerous as to render joinder impracticable, an overwhelming community of interests exists among the class, the class representative has claims typical of the class, and the named plaintiff and his counsel adequately represent the class.

### 3. *Pfizer's opposition to class certification.*

Pfizer opposed class certification, arguing the case is replete with factual issues that only can be determined upon individual inquiry of each class member, and such individual inquiries predominate over any common issues. Pfizer enumerated those issues as follows: whether each class member saw or read a label; if so, *which* of the labels was seen or read; whether the consumer was deceived or misled by, or relied on, the label; if so, whether that was part of the bargain and caused the consumer to buy Listerine; if so, whether the consumer suffered injury in fact and lost money or property as a result of the alleged deception or reliance; and if so, the amount of damages or restitution, given that prices vary and most consumers will not have records of the price(s) they paid.

Pfizer reasoned a consumer may have purchased Listerine not because of any alleged deception "but because he was brand loyal, he wanted a breath freshener, his dentist recommended it, due to a price promotion, or because the consumer read the label's admonition to 'floss daily' or 'not a replacement for floss' and did not take away any alleged deceptive message, each of which is an individual issue that cannot be resolved on a class-wide basis."

### 4. *Trial court's ruling.*

After hearing the matter, the trial court issued an order on November 22, 2005, certifying a broad class, on an opt-out basis, consisting "of all persons who purchased Listerine, in California, from June 2004 through January 7, 2005."

---

Although the marketing campaign in issue began in June 2004, before the adoption of Proposition 64, there is no contention Proposition 64 is not fully applicable to this case.

In its written ruling, the trial court noted "[w]hile Proposition 64 amended [section] 17204's standing requirements to prosecute UCL claims (by mandating that a private party suffer an 'injury in fact' and lose money or property as a result of the practice), *whether the standing requirements for class members also changed under the UCL is an open issue.*" (Italics added.)

The trial court reserved jurisdiction to modify the class definition, decertify the class, or replace Galfano with a new class representative. In certifying the class, the trial court also severed the breach of warranty claim, pending determination of the viability of the UCL claims in subsequent phases of the proceedings.

The trial court also expressed numerous reservations concerning the remedies available to the class. Specifically, "upon proof of false or misleading advertising, or of a fraudulent or unfair practice, injunctive relief may be available. However, any restitutionary relief may be problematic. Insofar as the advertising and labeling is no longer in use, injunctive relief may not be appropriate. With respect to restitutionary relief, the requirements of 'injury in fact' or 'lost money or property as a result' of the conduct of Defendant Pfizer, as imposed by Proposition 64, may preclude recovery on a class basis. Similarly, proof of the claim for restitutionary disgorgement appears problematic, to the extent there must be some correlation between the amount of restitutionary relief and conduct justifying recovery. The Court further has reservations with respect to the remedies on Plaintiff's breach of warranty claim, as the measure of damages is defined under Commercial Code § 2714(2)."

Despite its stated reservations, the trial court certified the class in accordance with Galfano's broad definition.

5.  *Pfizer's writ petition; our previous decision in this matter.*

On December 29, 2005, Pfizer filed the instant petition for writ of mandate, seeking vacation of the trial court's order and entry of a new order denying class certification.

This court issued an order to show cause.[3]

In an opinion filed July 11, 2006, we addressed, inter alia, whether each member of the putative class asserting a claim under the UCL or the FAL must, in the language of Proposition 64, have suffered injury in fact and lost

---

[3] A defendant generally has the right to have class certification issues resolved before the merits of an action are decided. (*Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 262 [178 Cal.Rptr. 612, 636 P.2d 575].)

money or property as a result of such violation, or whether this standing requirement is only applicable to the class representative or named plaintiff.

We concluded: "Proposition 64 requires private representative actions to satisfy the procedural requirements applicable to class action lawsuits. (Ballot Pamp., General Elec. (Nov. 2, 2004) Prop. 64, Official Title & Summary, p. 38.) . . . [I]n order to meet the 'community of interest' requirement of Code of Civil Procedure section 382, which requires, inter alia, the class representative to have claims *typical* of the class, it is insufficient if the class representative alone suffered injury in fact and lost money or property as a result of the unfair competition or false advertising. (§§ 17204, 17535.) The class members being represented by the named plaintiff likewise must have suffered injury in fact and lost money or property as a result of such violation."

We further concluded "that unless an action under the UCL or the FAL is brought by the Attorney General or local public prosecutors, the mere likelihood of harm to members of the public is no longer sufficient for standing to sue. Persons who have not suffered any injury in fact and who have not lost money or property as a result of an alleged fraudulent business practice cannot state a cause of action merely based on the 'likelihood' that members of the public will be deceived. (§§ 17204, 17535.)"

Further, "inherent in Proposition 64's requirement that a plaintiff suffered 'injury in fact . . . *as a result of*' the fraudulent business practice or false advertising (§§ 17204, 17535, italics added) is that a plaintiff actually *relied* on the false or misleading misrepresentation or advertisement in entering into the transaction in issue."

We concluded the trial court's ruling, which certified a class consisting of all persons who purchased Listerine in California during a six-month period, was overbroad. We granted the relief requested.

### 6. Subsequent proceedings.

On November 1, 2006, the Supreme Court granted review in this matter and ordered briefing deferred pending its decision in *Tobacco II*.

On May 18, 2009, the Supreme Court issued its decision in *Tobacco II, supra*, 46 Cal.4th 298, clarifying the impact of Proposition 64 on the standing requirements in a UCL class action.

On August 19, 2009, the Supreme Court transferred the instant matter back to this court with directions that we vacate our decision and reconsider the matter in light of *Tobacco II*.

Upon remand, we vacated our prior opinion, received supplemental briefs from the parties and amici curiae and set the matter back on calendar.

## CONTENTIONS

Pfizer contends that applying *Tobacco II* to the instant facts, this court correctly ruled in 2006 that the trial court abused its discretion in certifying a class because the class definition remains overbroad. In addition, Galfano lacks standing to assert most of the claims at issue and, accordingly, his claims are not typical of those of the class and he is not an adequate class representative.

Galfano contends this court should uphold the trial court's order certifying a class of all persons who purchased Listerine in California from June 2004 through January 7, 2005, because Proposition 64 did not abolish the "likely to deceive" standard under the UCL, and Proposition 64 does not require each putative class member to have suffered an injury in fact and lost money or property as a result of a defendant's UCL violation.

## DISCUSSION

1. *Standard of review.*

Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. (*Tobacco II, supra,* 46 Cal.4th at p. 311.) In the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed unless (1) improper criteria were used or (2) erroneous legal assumptions were made. (*Ibid.*) When a trial court's decision rests on an error of law, that decision is an abuse of discretion. (*Ibid.*)

Insofar as the issues before us involve the meaning of certain language in the UCL and FAL as amended by Proposition 64, they present questions of law that we review de novo. (*Tobacco II, supra,* 46 Cal.4th at p. 311.)

2. *The fraud prong of the UCL.*

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." (§ 17200.) Therefore, under the statute there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent. (*Tobacco II, supra,* 46 Cal.4th at p. 311.) We are here concerned with the third prong of the statute—an allegation of a fraudulent business act

or practice, specifically claims of deceptive advertisements and misrepresentations by Pfizer about the efficacy of Listerine mouthwash.[4]

Historically, in order to state a cause of action under either the UCL or the FAL, case law only required a showing that " 'members of the public [were] *likely to be deceived.*' [Citations.]" (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660], italics added.) Allegations of actual deception, reasonable reliance and damage were unnecessary. (*Ibid.*) The "likely to be deceived" standard was not altered by Proposition 64. (*Tobacco II, supra*, 46 Cal.4th at pp. 312, 320.)

However, as explained below, Proposition 64 altered the standing requirement for the class representative in a UCL class action.

### 3. The impact of Proposition 64 on UCL class actions.

■ Prior to passage of Proposition 64 the UCL authorized any person acting for the general public to sue for relief from unfair competition. (*Tobacco II, supra*, 46 Cal.4th at p. 314.) Standing to bring such an action did not depend on a showing of injury or damage. (*Ibid.*) After Proposition 64, which the voters approved at the November 2, 2004 General Election, " 'a private person has standing to sue only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." (§ 17204, as amended by Prop. 64, § 3; see also § 17203, as amended by Prop. 64, § 2.)' " (*Tobacco II, supra*, 46 Cal.4th at p. 314.)

*Tobacco II* analyzed the impact of Proposition 64 on UCL class actions.

■ *Tobacco II* "address[ed] two questions: First, who in a UCL class action must comply with Proposition 64's standing requirements, the class representatives or all unnamed class members, in order for the class action to proceed? [*Tobacco II*] conclude[d] that standing requirements are applicable *only to the class representatives*, and not all absent class members. Second, what is the causation requirement for purposes of establishing standing under the UCL, and in particular what is the meaning of the phrase 'as a result of' in section 17204? [*Tobacco II*] conclude[d] that a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate *actual reliance* on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions. Those same principles, however, do not

---

[4] A violation of the UCL's fraud prong is also a violation of the false advertising law (§ 17500 et seq.). (*Tobacco II, supra*, 46 Cal.4th at p. 312, fn. 8.)

require the class representative to plead or prove with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements when the unfair practice is a fraudulent advertising campaign." (*Tobacco II, supra*, 46 Cal.4th at p. 306, italics added.)

4. *The class certified by the trial court, i.e., all purchasers of Listerine in California during a six-month period, is grossly overbroad because many class members, if not most, were never exposed to the alleged misrepresentations and are not entitled to restitutionary disgorgement.*

■ The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution. (*Tobacco II, supra*, 46 Cal.4th at p. 312.)[5] " 'Through the UCL a plaintiff may obtain *restitution . . .* in order to·. . . *restore to the parties in interest money or property taken by means of unfair competition.*' " (46 Cal.4th at p. 313, italics added.) Proposition 64 imposed a standing requirement on the class representative, but did not enlarge "the substantive rights [or] the remedies of the class." (46 Cal.4th at p. 324.)

■ With respect to the remedy of restitutionary disgorgement, *Tobacco II* stated: "[T]he language of section 17203 with respect to those entitled to restitution—'to restore to any person in interest any money or property, real or personal, which *may have been acquired*' (italics added) by means of the unfair practice—is patently less stringent than the standing requirement for the class representative—'a person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition.' (§ 17204, italics added.) This language, construed in light of the 'concern that wrongdoers not retain the benefits of their misconduct' [citation] has led courts repeatedly and consistently to hold that relief under the UCL is available without individualized proof of deception, reliance and injury. [Citations.]" (*Tobacco II, supra*, 46 Cal.4th at p. 320.)

Be that as it may, one who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution.

■ Here, the class certified by the trial court, i.e., all purchasers of Listerine in California during a six-month period, is grossly overbroad because many class members, if not most, clearly are not entitled to restitutionary disgorgement. The record reflects that of 34 different Listerine mouthwash bottles, 19 never included any label that made any statement

---

[5] Injunctive relief is not available where, as here, the "as effective as floss" campaign has ceased and there is no threat that the misconduct to be enjoined is likely to be repeated in the future. (*Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 465 [30 Cal.Rptr.3d 210].)

comparing Listerine mouthwash to floss. Further, even as to those flavors and sizes of Listerine mouthwash bottles to which Pfizer did affix the labels that are at issue herein, not every bottle shipped between June 2004 and January 2005 bore such a label. Also, although Pfizer ran four different television commercials with the "as effective as floss" campaign, the commercials did not run continuously and there is no evidence that a majority of Listerine consumers viewed any of those commercials. Thus, perhaps the majority of class members who purchased Listerine during the pertinent six-month period did so not because of any exposure to Pfizer's allegedly deceptive conduct, but rather, because they were brand-loyal customers or for other reasons.

The circumstances herein stand in stark contrast to those in *Tobacco II*, where the tobacco industry defendants allegedly violated the UCL "by conducting a decades-long campaign of deceptive advertising and misleading statements about the addictive nature of nicotine and the relationship between tobacco use and disease." (*Tobacco II, supra*, 46 Cal.4th at p. 306.) *Tobacco II* allows a class representative who actually relied on the defendants' misleading advertising campaign to represent other class members who may have lost money by means of the unfair practice. *Tobacco II* does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution.

As Pfizer argues, it is one thing to say that restitution can be awarded to purchasers of cigarettes where the cigarettes were marketed as part of a massive, sustained, decades-long fraudulent advertising campaign on the grounds the tobacco industry defendants "may have . . . acquired" (§ 17203) the purchase price as a result of such a pervasive fraudulent campaign. It is entirely another to say that restitution can be awarded to all purchasers of Listerine in California over a six-month period where the undisputed evidence shows many, if not most, class members were not exposed to the "as effective as floss" campaign and therefore did not purchase Listerine because of it.

In sum, the certified class, consisting of all purchasers of Listerine in California over a six-month period, is overbroad because it presumes there was a classwide injury. However, large numbers of class members were *never exposed* to the "as effective as floss" labels or television commercials. As to such consumers, there is absolutely no likelihood they were deceived by the alleged false or misleading advertising or promotional campaign. Such persons cannot meet the standard of section 17203 of having money restored to them because it "may have been acquired by means of" the unfair practice. In

the language of section 17203, with respect to perhaps a majority of class members, there is no doubt Pfizer did not obtain any money by means of the alleged UCL violation.

Therefore, the trial court's November 22, 2005 order certifying the class must be vacated.[6]

> 5. *Additionally, Galfano lacks standing to assert most of the claims at issue; he is not an adequate class representative.*

Leaving aside the overbreadth of the class definition pursuant to the principles enunciated in *Tobacco II*, Galfano lacks standing to represent the entire class.

*Tobacco II* held the named class representative must plead and prove his "actual reliance" on the alleged misrepresentation to have standing under Proposition 64. (*Tobacco II, supra*, 46 Cal.4th at p. 326.)

Galfano testified he did not make his purchase based on any of the four television commercials or other ads, and that he bought Listerine due to the bottle's red label (which differed from the other labels), which he recalled said "as effective as floss," but he did not recall what else the label said. Because the various commercials and labels contained different language, *with some expressly advising consumers to continue flossing*, Galfano's testimony as to his reaction to the Listerine red label is not probative of his, or absent class members', reaction to different language contained in television commercials and other labels. Therefore, Galfano lacks standing to assert a UCL claim based on those television commercials or other labels.

We are mindful *Tobacco II* held "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." (*Tobacco II, supra*, 46 Cal.4th at p. 328.) The tobacco litigation arose out of the "decades-long campaign of the tobacco industry to conceal the health risks of its product while minimizing the growing consensus regarding the link between cigarette smoking and lung cancer . . . ." (*Id.* at p. 327.) Here, unlike the saturation advertising promulgated by the tobacco defendants, the Listerine "as effective as floss" campaign was limited in its

---

[6] Our decision herein is in accord with *Kwaak v. Pfizer, Inc.* (2008) 71 Mass.App.Ct. 293 [881 N.E.2d 812, 818], wherein the Appeals Court of Massachusetts concluded the class definition was overly broad, precluding certification of a class (class definition was everyone who purchased Listerine products during the advertising campaign, regardless of whether a purchaser was exposed to the campaign).

scope and lasted just over six months. Therefore, Galfano's limited experience with respect to a particular label that he viewed is not representative of other consumers' experiences with respect to other aspects of Pfizer's "as effective as floss" campaign. Accordingly, Galfano is an inadequate class representative.

## DISPOSITION

The petition for writ of mandate is granted.

Let a peremptory writ of mandate issue, directing respondent superior court to vacate its November 22, 2005 order granting Galfano's motion for class certification and to enter a new and different order denying the motion. Pfizer shall recover its costs in this proceeding. (Cal. Rules of Court, rule 8.493.)

Croskey, J., and Kitching, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 17, 2010, S181786. Chin, J., and Corrigan, J., did not particpate therein.